Would it please the Court, David Rosenfeld, on behalf of the Union, Fresh Fruit and Vegetable Workers, Club 1096 would like to reserve five minutes for rebuttal. In August of 2003, the Union and the Teamsters and the company entered into an election agreement. The votes were to be counted four months later, on December 3, and the employer had four months to prepare for the outcome of that election, which it won. And as a result of the agreement between the parties, the employees who had been locked out since 1989 were entitled to reinstatement by asserting their seniority. Notwithstanding that four-month time to prepare, the employer waited after December 3 until December 19 to finally send letters to the employees offering them a job. And then, more than a month later, after 24 of them had responded, waited another month to reinstate them. Before this Court are several issues. The first issue involves that delay between the date the certification issued on December 15 and the date offers were mailed on January 28 to the employees to come back to work. And this all comes within a context of clear Board law that when strikers request their jobs back, assuming they haven't been permanently replaced, they're entitled to immediate reinstatement. And for 40 years the Board has always used that term, they're entitled to immediate reinstatement. The Board has modified that doctrine in the drug packaging case to say, well, there's a wiggle room of five days, not if you're a striker, but if you're an unfair labor practice striker, because that allows the employer some administrative time to unscramble the fact that people have been hired, terminate them, and instate the strikers, in that case unfair labor practice strikers. So the Board law has always been as approved by the courts that strikers are entitled to immediate reinstatement, no delay. Has there ever been a case resembling the facts of this case? Lots of cases, with the exception of the 14-year period. Isn't that the elephant in the room? I mean, you're talking here about a lockout that lasted 14 years, so it's difficult to discern in advance who you're going to have come back. Well, for purposes of the first 30 days of delay, that's irrelevant, the time period, because the parties had agreed and the Board found that the locked-out employees could assert their seniority. The Board specifically found that, I mean, it's not a matter of funding, but the agreement between the parties was that the locked-out workers could assert their seniority. And the Board said. And the replacement workers, everybody could assert their seniority. They're all being shuffled together. That's right. But every board. And there was an accompanying letter agreement in which it said that offers for re-employment would be open for re-employment would be open for 30 days. And the Board. That was right in there. That's correct. But the Board found explicitly that from the moment the certification issued on December 15th, the locked-out workers were entitled to assert their seniority. The Board said, however, the replacement employees were entitled to continue working only so long as they had greater seniority than any of the locked-out employees seeking reinstatement. So from the date of December 15th, the locked-out employees were entitled to assert their seniority. And you're right. The replacement seniorities, replacement employees had seniority, but many of them had only worked there for less than a year. In fact, the testimony was there were some five who had been employed in Yuma. They had a few months or weeks' worth of seniority. And it's contrary to any concept of seniority to say that replacement employees who have brief seniority can trump employees who, everyone agrees, have 13 or more years of seniority. And every board – not every board case, but the majority of the board cases. But if you're not working there for over 14 years, how do you know who's going to come back? I mean, you can tell me that you know that there's a lot of seniority, but you don't know, because you don't know what workers are going to come back. You don't know if any of the workers are going to come back. Well, the employer was told during the course of the board proceedings that approximately 30 would come back. And the employer began learning in late December that employees did want to come back. So by the end of December, it had a group of ten long-service employees, all of whom had said, we want to come back. And there was no reason by the end of December the employer couldn't have said, we've got ten long-service employees, many of whom had more seniority than any of the replacement employees. So the employer could easily have said on January 1st, we've got ten already. You folks can come back January 2nd and start working. By the end of January 15th, another two weeks later, there were another nine or ten who had requested reinstatement, all of whom had more seniority. All of them had more seniority than all of the locked – than some of the locked out employees, the replacement employees. By the time all 24 had requested reinstatement, every one of them had more seniority than at least some of the replacement employees. In some cases, decades more, yet the employer refused to allow them to assert their seniority and come back once the employer knew. You take the National Football League case, which is an example of this kind of a problem. Many of these employee reinstatement cases involve seniority issues. People go on strike, things change, they request to go back to work. Employers have to sort this out. In the National Football League case, the employer implemented a rule that said on a Wednesday, unless you request going back to work, you can't play the Saturday and Sunday games. And the strike was settled on Thursday, which didn't give much time for people to come back. And yet the board said those striking football players were entitled to come back immediately, notwithstanding that rule that the employer had implemented just before that they had to let them know by Wednesday. And what's interesting is that in the course of the board commenting on that, the board recognized, and this to me is dispositive language said, in addition, we find that the logistical and administrative burden of reinstating the strikers does not justify the rule either. In this regard, the respondents are premised entirely on the burden of reinstating the entire 1,100-player complement. And then went on to say that even those rule applies to one. And then the board said we also note that the respondent employers maintained a substantial complement of replacement players as well after the strikers had been fully restated. And they say even the fact that they had to reinstate 1,100 people, striking football players, on Thursday to play Saturday and Sunday, that was an administrative burden, and when employees request the right to go back to work under well-established board precedent, that instatement is immediate. Well, my worry, I guess, Counselor, is this. I have an LLRB case in front of me right here. What is the standard of review that I give to the board? Under the St. Vincent's case, it's substantial evidence. Okay. And one could say a substantial and legitimate justification for delay. One could say won't be disturbed as long as it's reasonably defensible. One could say no violation unless the board has no rational basis. Now, all of those are standards that I've seen in the case law. Now, we had an agreement pursuant to that stipulated election agreement and the accompanying letter agreement in which it said reemployment would be open for 30 days. The election happened on December 15th. On December 19th, the letters went out. On December 15th, saying that the lockout had ended, they were given until January 22nd to say whether they were going to come back or not, and then they went on with another month that the board found to be totally unreasonable. Now, if I'm to do it on a rational basis or substantial evidence test, how do I, with a lockout of this magnitude, suggest that the board has no substantial justification, no rational basis, no reasonable defensible basis for doing what they did? And it seems to me the facts then can be argued and then we have to say, does it say the board just can't do it? I think there's a very clear answer to that, which is sort of the theme of this argument. I mean, the worry that I had is that you presented your case as best you can, and even if I would want to agree, I have no way to agree on just what I want to do. I have to do it based on the standard of review. I think there are two answers. One, if you accept the proposition, as I think this Court must, that instatement is immediate, the board has to find some explanation why it's overruling that clear rule of law, that instatement is immediate. And number two, I think the board's decision is founded upon this principle that is inconsistent. It finds that the parties agreed that no replacement employee with less seniority may work instead of a locked-out employee with more seniority. Yet it goes on to totally ignore that because on December 15th, December 19th, December 29th, and all the way up until the end of January, there were a large number, if not virtually all of the replacement employees, had less seniority than the locked-out employees. And if the parties agreed to that and the board found that that was the agreement, that seniority would prevail, there is no rational basis to ignore that, and this case should be remanded to the board to explain how it can avoid that seniority agreement which it approved in its own decision. Well, but didn't we have 133 locked-out employees? Didn't we have 90 replacement employees? And of those 133 and 90, there were 90 to 100 jobs. And so they were trying to now sort out how they were going to do that based on seniority, those with the best seniority as the lock-outs and the replacements given jobs. How was anyone to know in some period of time? So what they did is they selected a way to do it. But the board found that the way they did it was wrong because they took an extra month. But as to the month, if I compare 30 days to 14 years, it is immediate. But you still can't compare 14 days or 30 days to the board rule that once the employees are entitled to go back to work, it isn't two weeks or a month later, it's immediate. There are board cases where the board has approved delay. For example, the primary case to rely on in the Mercy Hospital case where nurses requested to go back to work and state law said they couldn't come back until they passed a certain physical exam because of health issues. And the employer went out and made every effort to get those health exams so people could come back. There's also other ‑‑ Council, I have a question for you then. Now, where does the need for training after this long lockout, where does that fit in the analysis? Well, that fits primarily in the second part where we've argued about the overtime issue. But what the facts show about training was that if the employer was correct and had to wait because of concern about training 100 people, there was no way it could practically train them anyway as a group. But the evidence shows that when the workers came back on February 23, the employer had no idea whether any particular employee needed training, had no idea whether an employee had any physical or other limitations, and the evidence shows, because the parties stipulated, that after the first day or two where they were shown movies and filled out forms, all of the workers who returned were integrated into the workforce within five days and worked independently. No training was needed after that date. And the important point is for the overtime issue, which was that the employer said, we're going to deprive you of overtime for 20 days. Now, they can do that for new hires, we're not disputing that, but not for employees who gave up their strike and came back to work because after five days the employer had integrated them into the workforce except for still depriving them of that overtime opportunity. Well, some were given overtime, weren't they? They were all allowed to work overtime only on weekends, which, of course, strengthens our argument they should have been allowed to work other times. And they were given travel pay that normal trainees don't normally get, weren't they? They were given that travel pay because they were asked to report to Arizona instead of to other coolers where they normally would work. But other trainees would not normally have got that, would they? No. I don't know. That's true. But the fact is that they were still deprived of this important right to work overtime, which in coolers is very important because during the season there's lots of overtime. And more importantly, for the inherently destructive posture this case is in, it's saying to workers you give up your strike, which is a right that's critical to the National Labor Relations Act, you go back to work and you're still being deprived of an important benefit, which is your overtime. And that's the overtime issue. We're asking that that be remanded to the board because we think that the record shows that the employer had no reason to believe they needed training. And the fact is to some of these issues of training, some of the employees were forklift drivers who didn't even get the training that the other employees got. But the critical fact is that after five days they're all integrated into the workforce, and the employer should have said at that point, strikers, you're entitled to immediate reinstatement. Strikers, you're entitled to be treated like everybody else. You're integrated in the workforce. You're working independently. So at this point, you're going to get to work overtime like everyone else so as not to deprive you of that important right that you had, which was immediate reinstatement with your seniority. I'll reserve the rest for rebuttal. Thank you. May it please the Court. I'm Joan Hoyt, counsel for the National Labor Relations Board. Your Honor, this is a highly unusual case in terms of the circumstantial circumstances, meaning the facts of this case. What the board found is that it could not apply the analytical framework that it generally would apply to strikers and reinstatement rights of strikers as my opponent has informed you, and as the record shows and the board found, this case involved employees who had been out of work for 14 years. In the real world, I have been working with the board for 16 years, and over that amount of time, our whole process, our way of operating has changed. If I put myself in the posture of one of these strikers who was out for 14 years and came back, the board would have to retrain me. The facts show that the company's operation had completely changed. Apart from producing vegetables, it had changed the way it processed orders. Employees now had to use scanners. They had to know where stuff was located in these coolers. And for that reason, the board found that well, for that and other reasons, which I would soon get to, the board found that there was no violation in the company's delay of the reinstatement. Let's start at the back end for a second. Mr. Rosenfeld just mentioned that when they actually did resume work at the cooler in Yuma, in any event, that after five days, they were fully integrated and no special training or treatment was otherwise required. With regard to the eligibility for overtime issue, does that suggest that holding them off for 30 days is a problem? Your Honor, I think what Mr. Rosenfeld ignores to mention to the court is that the union signed a stipulated set of facts. The complaint on the overtime issue did not go to a hearing. There were stipulated facts which the union signed. And in those stipulated facts, the union agreed that the company should train these employees. They needed training. They could not operate within the unions, within the company's new business operation, and they needed training. That was signed by. So to now stand before the court and say, well, they should not have been allowed to be trained for what the board considered to be a limited period, four weeks, hints on, if I can use this term, buyer's remorse. The union agreed that these people needed training. And the union also agreed that new employees hired by the company were all trained similarly and got limited overtime during that training period. The board relied on those facts and found that the training that was given here and the overtime that was allowed or not allowed was not violative of the act. I just want to make sure I understand your point. I'm looking at the, basically, it's the joint motion to approve stipulated record. And there's a description there that the returning employees would be treated as new employees. Just if you have it, I'm looking at ER095, which is page 3 of the joint exhibit. And it's paragraph E. It says respondent treated the seven returning locked out employees as if they were new employees for the purposes of overtime assignments during the first four weeks. And gives the reasons for doing so based upon respondent's belief. Is that what you're pointing to when you speak of what the ---- The stipulated facts were. That doesn't necessarily say that the respondent's belief was correct. It doesn't necessarily say, but the union could have refuted this in these facts. These facts are here. And because there was no hearing on this specific issue, the ALJ or the board, the ALJ relied on these and cite them at length at ER1, I think that's what you looked at, 122. But to the extent that there was a stipulation that these employees were to be treated as new employees, the new employees, the company did nothing different here than it would have done for newly hired workers. The other unusual fact about this case is that apart from the 14 years in which the employees were out, the union signed a letter of agreement. And that letter of agreement dictated the 30-day period that at the front end of the period that the union is saying that these employees should have been brought back, the letter of agreement dictated that the company would leave open 30 days in which these employees, 133 of them, would reply. Were the company to limit that 30-day, I posit here that the union would be here arguing that the company limited a 30-day period that it had agreed to. Well, the two periods don't have to be different. You could be given 30 days to accept an offer, but once you've accepted the offer and want to come back to work, is there a reason that you can't come back to work until they've heard from everybody else? And the board found and agreed that the company had a substantial and legitimate business justification for that. It had sent out 133 letters offering employees reinstatement, and it wanted to see how many of them would come back, because it anticipated that there would be training required for a large group of employees. And for that reason, the board found that these employees, the company, I'm sorry, was allowed or permitted to wait for that period and have these employees come back. Now, I've gone through the record, and I found some information, not information, but facts, which the administrative law judge looked at, and I think are pertinent to point out to the Court here, that it was not only that the company wanted to train these employees. The company took into consideration, as it stated before the administrative law judge, that some of these employees lived out of state, and bringing them back at a specific time required making, giving consideration to changes that might have to be made in their living arrangements, perhaps. Some employees also were working with other employers and did not want to, there was one employee who did not want to leave the company. He did not want to leave that employer on a bad note, because he had been there, and sure, he wanted to come back to work with the company, but he wanted that period of time, the standard two weeks, to let the company know that, his present employer know that he was not going to be there anymore. And for training purposes, the company's supervisor and manager, the only one that had been there at the beginning of the strike, and who knew these employees, had been there in 1989 when the lockout started, and was still there in 2003-2004, was the one who was going to be responsible for training. And he had some conflicts in his availability. So for all these reasons, it is true that if these facts are looked at in a certain light, it is true that the company is responsible for training, that one, as Your Honor pointed out, one can go find that they support one conclusion or the other. But the Board had this case to deal with. It's a case that came to the Board on these facts, which the Board could not change. In cases where employers' reinstatement rights are at issue, especially unfair labor practice strikers, because my colleague points to the fact that the Board has the strict rule that replacement, sorry, strikers must be brought back, and all of them must be brought back. But here, in this letter of agreement, the union allowed the company to treat, it promoted these temporary people, employees or workers who had been brought in, to see the company through the lockout, it allowed the company to treat them as though they were permanent employees. It says as long as their seniority right is more than or perhaps on par with these people who would come back, you can keep them and treat them as though they're the same as these locked out employees. The Board had never, and the Board states that in its decision, we have never seen a case like this. And the Board deals with the cases as they come before it. We cannot make the facts of the case. Under other circumstances, where there is not an agreement signed by the representative, the elected representatives of the employees, perhaps this case would have gone otherwise. But this is a case we had to deal with. And the Board's decision here is ultimately reasonable under the facts of this case. Let me ask you a question. The fact that the only ones who received back pay were those who reported back to work on the designated day, rather than everyone who was locked out, the question there is, why did we not allow the back pay for at least those who, the 24 who suggested they would report? I mean, they gave everybody a chance to say what they would do. And then they only gave back pay to those who came back to work. There were 24 who said they would come back. Why did they not get any? The only one who accepted the offer for reinstatement was sent letters telling them where to come and when to come. And only seven, well, eight, one of whom did not show up after the first day. But only seven showed up. And the Board said that they did not provide, they never called the company to say we are unable to come, can we come at some later time. There was no reason given for them not showing up. And on that basis, the Board said, well, we have nothing in the record. The union offers no facts showing that these employees would have come other than for the delay. There's nothing on the record. And based on that, the Board said they were not interested ultimately. And therefore, because the back pay remedy must be sufficiently tailored to expunge actual, not speculated consequence of the practice, that's the reason for the Board's determination. That's the reason for the Board's determination, Your Honor. I wanted also to touch on some of the, a few of the cases that the union mentions as presidential cases here. In the case of the Lockout, all of those cases are different, are distinguishable, and are not applicable here. They do not include, involve the unusual circumstances of this case. None of those cases involve lengthy lockout in which the employer changed his operation to the point where returning employees would not be able to operate within that situation, and where there is an agreement voluntarily signed by the union saying that these returning employees would only trump the replacement employees if their seniority is more than those of the replacement employees. The Board believes that as this case came before it, this is the opinion that it should issue and could have issue on the facts of this case. This is a highly unusual case. In any other circumstance where we did not or do not have the unusualness of this case, this decision would have gone otherwise. If Your Honor have no further question, the Board rests on its brief. Apparently not. And we thank you for your argument. Rebuttal. I'm sorry. Your Honor, you hit the nail on the head when you looked at Excerpt of the Record 95, because all that states is it was that the parties agreed that it was the respondent's view based on its experience with new employers. It was not a stipulation as to any fact that training was necessary. And that's all cleared up in the next page, Excerpt of the Record 96, where the parties, everybody stipulated that certain locked out employees returned as loaders and inside forklift drivers who didn't have to have some of the training that the company asserted. And then it goes on to state, within five days of their return, on February 23, 2004, all seven of the returning locked out employees were working independently. And to indicate why the Board's failure to say they should have overtime after at least five days, I only need to point to the Board's decision itself, where the Board says, in Excerpt of the Record 150 at the bottom, far from undermining the respondent's contention, we believe that the respondent has supported its case by showing that full overtime was restored as soon as employees returned. And that the employees showed their full abilities. The parties stipulated, at the latest, it was five days after they all got back to work. The counsels confused the training issue with the instatement issue for the first 30 days. Our position is, with respect to the first 30 days, which is the date from December 15, when the certification issued, to January 28, when the letter was issued, to February 23, that this was all dictated by Board law, which he concedes is applicable, that immediate reinstatement is the normal course, and that the parties had agreed that the employees could immediately assert their seniority. The locked out employees could assert their seniority. Both replacement workers and returning workers had seniority rights. But I don't see anything that speaks directly, as your use of the word immediately may suggest, to when it is they actually go back on the payroll. Well, the Board actually found that it was immediate, because the Board said, at the Excerpt of the Record, page 145, they said exactly that while we find, this is page 145, the left-hand column, while we find that the respondent's obligation to reinstate the formerly locked out employees rose on the date that each individual accepted its offer to return to work. Given the unusual circumstances surrounding this case, we conclude that the Board had agreed that once an employee said, I want to come back to work, he could assert or she could assert her seniority. And I agree that the company had to compare that seniority against replacement employees who were working. So when Robert Tully, who had two decades of service, said in December, I want to come back, they had to look, was there any replacement employee with more seniority? Had they checked, they would have seen there wasn't a person who could touch him for seniority. They should have put him back to work at that point. Well, but just a minute, Counsel. What you've got here, the Board said, okay, we're going to live with this 30 days, because the union agreed to the 30 days. So the company could delay reinstatement until January the 22nd, which is exactly the 30 days. But they could not have further delay until February the 23rd. And nobody's even thought about that. In fact, the Board hasn't even come back. Nobody has thought that. The company, nobody is saying that that part of their decision is wrong. So what the Board is really suggesting, and again, we're going back to standard to review. If you stipulated, as the union, that there was going to be an offer of reemployment open for 30 days, and they send the letter, and it went out for the 30 days, and they then ruled that they could only delay the reinstatement until the end of that 30 days, then it seems to me they have complied with the very agreement that you put into effect. You're the ones that stipulated the 30 days. Your Honor, you've, with all due respect, confused 30 days. There's the aspect of how much time does an individual worker, wherever he is living, have to respond, because in every strike situation, some workers can't respond that day and come back. They may have got unemployment, there may be a health issue, so there's always some reasonable time in which striking workers get to respond to come back. The parties agreed because of these circumstances they'd have longer than usual 30 days. But that is a different concept than what has been Board law for 40 years, that so long as the employee is available, he gets to come back immediately, and in this case, the parties agreed that there would be a longer period of time for employees to respond to come back than 30 days. But once they said they were willing to come back, Board law was put him back then immediately. And that's exactly what the Board did. No. It said we're not going to allow for the any past January 22nd. But you're not the point, and I'll conclude this, is that there were 24 employees who said before January 22, I want to come back. A large but a substantial majority of them said they wanted to come back by the end of December. Another 9 or 10 by January 15, every one of them had sufficient seniority that they could have bumped a junior replacement employee, some of whom only had worked for a few weeks. They should have been instated at that time rather than say to them, you can't use your seniority, but the junior employee who's been here a week, a month or a year, can trump your long service seniority and continue working because that's contrary to the very heart of seniority. And that's the problem with the Board's decision. Thank you.
judges: Gould, Clifton, Smith